JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | | Date | March 6, 2013 |
|---|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys NOT Present for Plaintiffs: | Attorneys NOT Present for Defendants: | |

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

     This bankruptcy appeal presents complex legal questions that are seemingly unrelated to bankruptcy law. Appellant-Debtor Landmark Fence Co. ("Landmark") appeals from an order of the bankruptcy court allowing a claim of a class of its employees in the amount of more than $15 million. Landmark raises two objections. First, it argues that the bankruptcy court erred as a matter of law in concluding that Landmark's employees are entitled to compensation at prevailing wage rates for time spent fabricating components for use on public works sites and for time spent traveling between Landmark's shop and public works sites. Second, Landmark argues that the bankruptcy court erred in rejecting the damages estimate of Landmark's expert witness.

     The Court concludes that the bankruptcy court correctly determined that Landmark employees were entitled to compensation at prevailing wage rates for off-site fabrication work for public works projects. As for time spent traveling between Landmark's shop and the public works site, however, this Court hold that the bankruptcy court did not apply the correct legal standard in reaching its conclusion. Accordingly, the Court remands for the bankruptcy court to make the factual findings necessary to determine whether the employees' travel time is compensable at prevailing wage rates under the correct standard. Finally, the Court holds that, despite the fact that the bankruptcy court made an erroneous factual finding in rejecting the estimate of Landmark's damages expert, Landmark has not shown that the bankruptcy court committed clear error in adopting the estimate of the creditors' expert.

## I.     FACTUAL BACKGROUND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

    On May 6, 2003, James Sahagun and Gerardo Garcia filed a putative class action suit in California state court alleging various wage and hour violations against their employer Landmark, a company that specializes in the fabrication, installation, and demolition of chain link fencing and other fencing components. E.R. 616.  On March 15, 2007, the state court certified a class of "all current and former non-exempt employees who at any time from May 6, 1999 to the present were employed by [Landmark] to work on public works projects or private construction projects in the State of California" and appointed Sahagun and Garcia as class representatives. *Id.*

    Before trial of the class action on the merits, however, Landmark filed for Chapter 11 bankruptcy, which automatically stayed the state class action proceeding. *See* E.R. 29. On behalf of the previously certified class, Sahagun and Garcia (collectively, "the Sahagun Creditors") then filed a claim in the bankruptcy court against Landmark based on the alleged violations at issue in the state court proceeding. E.R. 616. Landmark objected to the claim, seeking to disallow it in whole or in part. E.R. 617. Pursuant to a stipulation of the parties, the bankruptcy court then adjudicated the merits of the unfinished class action proceeding. *Id.* After a lengthy trial and extensive briefing, the bankruptcy court issued a memorandum of decision containing findings of fact and conclusions of law.  E.R. 615.

    In its decision, the bankruptcy court found Landmark grew quickly after its founding in 1997, with  public works projects comprising an increasingly large percentage of its workload.  E.R. 620.  Based on the testimony of former employees, the bankruptcy court found that employees were generally required to report to the Landmark yard early in the morning. E.R. 622-23.  After performing some work at the Landmark site, including loading work trucks, Landmark workers would travel together to a work site. At the end of the day, the employees would travel back to the Landmark yard.  *Id.* The bankruptcy court found that employees "were controlled by Landmark" from their arrival at the Landmark yard until they returned to the yard at the end of the day.  E.R. 622.

    The bankruptcy court found that on "most" projects, Landmark would fabricate a custom component in its yard, which it would later install at the work site.  E.R. 625-626.  The court found that this "specialized, job-specific design and fabrication" was an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

essential feature of Landmark's business. E.R. 626. Although the court found that some component parts were "standard and interchangeable," it further found that Landmark "did not make parts for inventory and later use." *Id.*

The bankruptcy court also found that Landmark's payroll records were deficient and incomplete. E.R. 621-625. The court noted that it was "tricky" to match the timesheets, which show how many hours each employee worked in a given pay period, with the corresponding payroll records. E.R. 624. The bankruptcy court noted that workers' timesheets often had a "C" notation next to certain numbers, which the court found designated that the workers had been paid for some hours in cash. *Id.* There was no indication of the hourly rates used for these cash payments. *Id.* The bankruptcy court ruled that any inferences drawn from these cash payments must be against Landmark in light of its failure to maintain accurate records. *Id.*

For public works projects, Landmark was required to keep Certified Payroll Records. E.R. 624. The bankruptcy court found that these separate certified records, which never showed overtime or weekend work, were "false." E.R. 625. The court further noted that the records "demonstrate the cavalier, if not outright devious, attitude of Landmark in accurately maintaining payroll records and verifying that its employees were paid according to state law." *Id.*

The bankruptcy court found that Landmark was liable for failure to pay a prevailing wage for employees working on public works projects under California's Prevailing Wage Law (PWL). E.R. 632. Significant for this appeal, the court determined that Landmark was required to pay its employees the prevailing wage for the hours spent fabricating fences at the Landmark yard for use in public works, as well as for the time spent traveling from the Landmark yard to the public work site. E.R. 634-639. The court further ruled that Landmark was liable for failure to pay overtime and also liable for certain penalties for failure to pay these wages. E.R. 640-644.

Because Landmark's records were deficient, the bankruptcy court could not make precise calculations of the damages owed to the class. Hence, both parties submitted expert reports estimating the total amount of damages. E.R. 626. The bankruptcy court noted that the experts both concluded that "Landmark owed the class members a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

substantial sum of money" but that their estimates of the amount diverged considerably. E.R. 627. Considering each of the expert's estimates, the bankruptcy court criticized the sampling method used by Landmark's expert, Dr. Patrick Kennedy, finding that it introduced bias into his estimates. E.R. 627. The court thus decided to adopt the estimate of Dr. G. Michael Phillips, the Sahagun Creditors' expert, as its damages finding. E.R. 629. Based on these conclusions, the Court ruled that Landmark was liable for $14,345,615 in damages and $814,380 in statutory penalties. E.R. 645.

## II. STANDARD OF REVIEW

The Court reviews the bankruptcy court's findings of fact for clear error. *In re Palmdale Hills Property, LLC*, 457 B.R. 29, 40 (9th Cir. BAP 2011); *In re PW, LLC,* 391 B.R. 25, 32 (9th Cir. BAP 2008). For a finding to be clearly erroneous, it must be illogical, implausible, or without support in the record. *United States v. Hinkson,* 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc). A bankruptcy court's conclusions of law are reviewed *de novo*. *In re Reynoso*, 315 B.R. 544, 549 (9th Cir. BAP 2004).

In the underlying bankruptcy proceeding, the Sahagun Creditors had the ultimate burden of proving the amount and validity of their claim by the preponderance of the evidence. *In re Lundell*, 223 F.3d 1035, 1039 (9th Cir. 2009).

## III. ANALYSIS

### A. Prevailing Wage for Off-Site Fabrication and Travel Time

Landmark's first two arguments raise a question of statutory interpretation: does the PWL apply to off-site fabrication and travel in connection with a public works project? Based on well-established principles of statutory interpretation, the Court looks to the text of the provision before turning to case law and other relevant authorities.

#### 1. Statutory Text

The California Prevailing Wage Law provides that a prevailing wage must be paid to all workers employed on public works projects. Landmark does not dispute that its

**JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

employees were entitled to be paid this wage for work performed on the site of a public work project. It contends, however, that the PWL does not apply to off-site work. Three somewhat overlapping statutory provisions define the general scope of the law:

> California Labor Code § 1771: Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work fixed as provided in this chapter, shall be paid to all workers employed on public works.
>
> Labor Code § 1772: Workers employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon a public work.
>
> Labor Code § 1774: The contractor to whom the contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract.

     Section 1772 contains the clearest description of the law's scope: an employee is entitled to a prevailing wage for work performed "in the execution of any contract for a public work." That broad statement does not contain any geographic limitation–that is, it does not specify where work must be performed in order to be subject to PWL's coverage. The Court rejects Landmark's argument that the preposition "on" as used in § 1771, which requires that a prevailing wage be paid to "all workers employed on public works," connotes that the workers must be physically working on the site of the public work. It is commonly understood that to say that an individual works "on" a project describes *what* he is doing, not *where* he is doing it. A judge could "work on" a written ruling at his home, not in chambers and still be at work; "work" is not synonymous with "worksite." In this regard, the Court also rejects Landmark's argument that the Court should rely on other provisions of the PWL that do use expressly geographic language, such as § 1777.5(h) and § 1773.2. Despite their use of such language as "site" or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

"jobsite", these sections do *not* purport to define the scope of the law. Instead, they address other aspects of the law: the hiring of apprentices and the posting of wage determinations.

The absence of an explicit geographic limitation to the scope of California's PWL stands in contrast to the federal equivalent, the Davis-Bacon Act. For federal public works projects, the Davis-Bacon Act requires that the prevailing wage be paid to all workers "employed *directly on the site of the work*." 40 U.S.C. § 3142(c)(1) (emphasis added); *see also Building & Constr. Trades Dep't v. Dep't of Labor*, 932 F.2d 985, 990 (D.C. Cir. 1991) (holding that the quoted language "clearly connotes ... a geographic limitation"). The Davis-Bacon Act was enacted in 1931, and California passed its PWL a few years later, in 1937. *See* An Act of March 3, 1931, ch. 411, 46 Stat. 1494; West's Ann. Cal. Labor Code § 1771. This sequence suggests that California's omission of the Davis-Bacon Act's explicit geographic limitation was deliberate. Moreover, this divergence between California's PWL and the federal Davis-Bacon Act means that case law or regulations interpreting the federal act are of little or no help to a court construing the geographic scope of the PWL.

2. <u>Interpretations of the California Director of Industrial Relations</u>

Both parties argue that the Court should give weight to interpretations of the California Director of Industrial Relations that support their respective positions. The Director of the Department of Industrial Relations ("Director") has the authority to provide opinions on whether "a specific project or type of work to be performed" falls under the purview of the PWL. *See* 8 Cal. Code Regs. § 16001; *State Bldg. & Const. Trades Council v. Duncan*, 162 Cal. App. 4th 289, 295 (2008). The Director typically designates these case-specific opinions as "Coverage Determinations" and makes them publicly available. *See id.* at 198 (discussing coverage determination at issue in that case); *see also* www.dir.ca.gov/OPRL/PWDecision.asp (website listing the Director's coverage determinations).

In *Duncan*, the Court of Appeal considered a coverage determination that the Director had issued at an earlier stage of the dispute before the court. The court concluded that it was required to consider and respect the Director's determination, but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

that ultimately it should "independently judge the meaning of the statute." *See id.* In more recent case cited by Landmark, the California Court of Appeal cited *Duncan* and noted that the Director's interpretation, which arose from the same dispute before the court in that case, was "entitled to consideration and respect" as "one of several interpretive tools that may be helpful." *Azusa Land Partners v. Dep't of Indus. Relations*, 191 Cal. App. 4th 1, 14 (2010).

The Director has not issued a coverage determination in the instant dispute between Landmark and its employees. Instead, both Landmark and the Sahagun Creditors urge the court to rely on opinions arising from other disputes involving different parties. Landmark argues that this Court should adopt the reasoning of *Russ Will Mechanical Inc.*, PW 2007-008 (May 3, 2010), in which the Director held that an employee's off-site fabrication of custom ventilation equipment to be used in a public work did not fall under the coverage of the PWL.[1] For their part, the Sahagun Creditors argue that the Court should rely on the Director's opinion in *In Re Kern Asphalt Paving & Sealing, Inc.*, 04-0117-PWH (March 28, 2008), in which he held that certain construction workers were entitled to compensation at prevailing wage rates for time spent traveling to and from the public works jobsite.

Although the Director has the power to designate some opinions as precedential, which allows them "to be relied upon in subsequent determinations," *Duncan*, 162 Cal. App. 4th at 300 (citing Cal. Gov. Code § 11425.60), neither *Russ Will* nor *Kern Asphalt* carries that designation. Indeed, the Director has announced that all past and future coverage determinations are non-precedential and advisory only. *Duncan*, 162 Cal. App. 4th at 302-303. The California Government Code instructs that "[a] decision may not be expressly relied on as precedent unless it is designated as a precedent decision by the agency." Cal. Gov. Code § 11425.60 (a). Moreover, the parties have not cited any case in which a Court has granted any deference whatsoever to a non-precedential coverage determination arising from another case. Thus, the Court concludes that the non-

---

[1] The coverage determination in *Russ Will* is currently the subject of an appeal in the California Court of Appeals. *Sheet Metal Workers' International Assn., Local 104 v. Duncan*, No. A131489 (Cal. Ct. App.). Landmark also cites other coverage determinations issued by the Director but all are non-precedential and none are as applicable as *Russ Will*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

precedential opinions of *Russ Will* and *Kern Asphalt* are not deserving of the consideration that the *Duncan* and *Azusa Land Partners* courts gave to the case-specific coverage determinations in those cases.

Landmark also argues that this court should look to the Director's "Scope of Work Provisions," for support for its interpretation that the PWL applies only to work performed at the jobsite. *See* Op. Br. at 8 (quoting the Scope of Work Provisions as stating that "[t]his Agreement shall cover all work ... to be performed at the jobsite."). The bankruptcy court concluded that the Scope of Work Provisions are excerpts from collective bargaining agreements and have not been adopted by California courts as an interpretive guide on the scope of the PWL. For that reason, the bankruptcy court did not consider them as interpretive authority.

The Court sees no error in the bankruptcy court's disregard of these provisions. As the bankruptcy court stated, the Scope of Work Provisions appear to be excerpts from collective bargaining agreements that the Director uses in setting prevailing wage rates.[2] *See* E.R. 193. The text on which Landmark relies states that the "Agreement"–that is, the collective bargaining agreement–"shall cover all work ... to be performed at the jobsite." E.R. 195. This Court agrees with the bankruptcy court that this off-handed, vague comment is not even remotely similar to the coverage determinations to which deference is (in some circumstances) due under *Duncan*. Moreover, Landmark has not cited a single case in which a California court has relied on a Scope of Work Provisions document in deciding whether work fell under the PWL's coverage determinations. Accordingly, this Court will not consider the Scope of Work Provisions in construing the geographic reach of the PWL.

    3.    <u>Case Law</u>

No case precisely addresses whether off-site fabrication or travel time fall under

---

[2] In a regrettable omission, and despite the fact that they are the basis of its leading objection to the bankruptcy court's order, Landmark has not provided any citation to indicate where the Scope of Works Provisions may be found, either in the appellate record or a public database. However, the Court believes that the document to which Landmark refers appears in the appellate record. *See* E.R. 193-202.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

the PWL's scope.[3] However, a California Court of Appeal case is instructive in construing the geographic scope of the PWL. *Williams v. SnSands Corp.*, 156 Cal. App. 4th 742 (2007). In that case, the California Court of Appeal held that workers who hauled soil and related material off of a public works jobsite, either for disposal or sale ("off-hauling"), were not entitled to compensation at prevailing wage rates under the PWL. Based on California Labor Code § 1771, which states that workers employed "in the execution of any contract for public work are deemed to be employed upon public work," the court held that the key consideration was "the role the transport of materials plays in the performance or 'execution' of the contract." *Id.* at 752. The court further held that the following considerations governed the question of whether off-hauling was performed "in execution of" a public works contract:

> Whether the transport was required to carry out a term of the public works contract; whether the work was performed on the project site or another site integrally connected to the project site; whether work that was performed off the actual construction site was nevertheless necessary to accomplish or fulfill the contract.

Considering those factors, the *Williams* court concluded that there was no evidence that the off-hauling was necessary to the completion of the public works contract or that the prime contractor on the public works site directed the off-hauling process.

Although *Williams* addresses the particular function of "off-hauling," its analysis is nonetheless instructive in construing the geographic scope of the PWL generally. On that score, *Williams* is nuanced. Plainly, the location of the work performed is a relevant consideration. At the same time, *Williams* also refutes Landmark's argument that *all* off-site work is categorically beyond the reach of the PWL. Rather, the clear import of *Williams* is that off-site work must be compensated at prevailing wage rates if that work is "necessary to accomplish or fulfill the contract."

---

[3] As noted above, the California Court of Appeal appears poised to decide whether off-site fabrication falls under the PWL. *See Sheet Metal Workers' International Assn., Local 104 v. Duncan*, No. A131489 (Cal. Ct. App.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

Thus, the Court concludes that the *Williams* standard must govern whether Landmark employees must be paid a prevailing wage for work they performed other than on the public work site, specifically off-site fabrication and travel between the Landmark yard and the public works site.

   4.  Application: Off-Site Fabrication

Applying this framework, it is clear that the bankruptcy court's determination that Landmark was required to pay its employees at prevailing wage rates for off-site fabrication was sound. The bankruptcy court concluded that off-site fabrication was "integral," noting that the parts that were fabricated off-site were constructed according to "the requirements for installation under each contract." E.R. 629. Landmark has not shown (or even attempted to show) that this finding was clearly erroneous. Thus, this Court affirms the bankruptcy court's conclusion that Landmark's employees were entitled to compensation at prevailing wage rates for off-site fabrication work performed for public works projects.

   5.  Application: Travel Time

The bankruptcy court also concluded that the time Landmark employees spent traveling from the Landmark yard to the public works construction site was also compensable at prevailing wage rates. The bankruptcy court did not, however, apply the standard announced in *Williams*. Instead, the court relied primarily on *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), in which the California Supreme Court defined "hours worked" as including all the time during which an employee was "subject to the control of an employer. " In that case, such time encompassed travel time. E.R. at 636. But the issue in *Morillion* was whether employees were entitled to *any* compensation for required travel time. The case concerned agricultural workers. It has nothing to do with the PWL. For that reason, *Morillion* is not relevant in deciding the application of the prevailing wage law to time spent traveling to and from a public work site. That question requires a pronouncement on the scope of the PWL.

As explained in the previous section of this order, *Williams* is the instructive case on that point. Thus, as was the case for off-site fabrication, the relevant inquiry is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

whether the travel time was "required to carry out a term of the contract" or "necessary to accomplish or fulfill" that contract. The Court concludes that the bankruptcy court's failure to apply this standard amounts to reversible error.

Moreover, the Court concludes that additional fact finding is required to determine whether, under the *Williams* standard, the Sahagun Creditors' travel time is compensable at prevailing wage rates. The terms of Landmark's public works contracts and the practical conditions of the jobsite could help determine whether the Landmark employees' midday travel time was necessary to accomplish or fulfill" the contract. Perhaps Landmark's contracts generally specified the schedule of the typical Landmark worker's day–such as machine work in the shop followed by installation work at the jobsite. In that case, a factfinder could determine that the travel time was necessary under the contract, insofar as it required Landmark employees to begin the daily work at the Landmark yard and finish work at the jobsite. Similarly, even if the workday travel was not required by the contract itself, it may nonetheless have been mandated by the logistics of the project. If so, a factual finding on that point could support a conclusion that the Landmark employees' travel time satisfied the *Williams* standard. However, because the bankruptcy court did not apply the *Williams* standard, it did not make factual findings one way or the other. Accordingly, this Court remands on this issue for the bankruptcy court to make all factual findings necessary to decide whether the Landmark employees' travel time was integral to Landmark's fulfillment of its subcontract.

B.    Expert Opinions

Because Landmark's insufficient records did not allow for precise calculations of the total amount of unpaid wages owed to the class, both Landmark and the Sahagun Creditors submitted expert reports estimating the total amount of damages. The bankruptcy court admitted both reports and both experts testified at the trial. On appeal, Landmark argues that the bankruptcy court erred in not adopting the damages estimates of Landmark's expert, Dr. Patrick Kennedy.

Remarkably, Landmark has not included either of the expert reports in the record on appeal. This omission makes it very difficult for the Court to review the bankruptcy court's evaluations of the two reports. "The settled rule on appellate records in general is

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

that failure to provide a sufficient record to support informed review of trial-court determinations may, but need not, lead either to dismissal of the appeal or to affirmance for inability to demonstrate error." *In re Kyle,* 317 B.R. 390, 393 (9th Cir. BAP 2004). However, despite the deficiencies in the record, both parties agree that one of the bankruptcy court's factual findings regarding Dr. Kennedy's expert report was erroneous. Accordingly, although the Court does not approve of Landmark's failure to provide a sufficient record, it concludes that the sanctions of dismissal or summary affirmance are not appropriate in these circumstances.[4]

In its Memorandum of Decision, the bankruptcy court noted two major differences in the two expert reports. Of particular importance to this appeal, the bankruptcy court described the differing methodologies employed by the experts. E.R. 627. The parties had stipulated that 16,044 employee workweeks were at issue in the case. E.R. 626 n.3. Both experts compared certain weekly time sheets to the corresponding payroll records to calculate the amount of underpaid wages in a particular week for a particular employee. E.R. 627. The experts did not, however, simply add up the total unpaid wages for each of the employee workweeks at issue in the case. Rather, they calculated the unpaid wages to certain employees for certain pay periods and then extrapolated from those figures the damages to the class as a whole. E.R. 627 (bankruptcy court finding that the Sahagun Creditors' expert used this method); 1491 (Dr. Kennedy testifying that he used this method).

The experts used differing methods, however, to select the samples of individual records upon which to base the class-wide estimates. The expert for the Sahagun Creditors selected the records using a random sampling method. E.R. 627. Landmark's expert, Dr. Kennedy, did not use random sampling but used all of the "available" records to make up a base number upon which he estimated the class-wide damages. *Id.* According to the bankruptcy court, Dr. Kennedy "declined to evaluate any records where the total hours on the timesheet did not equal the total hours on the corresponding pay

---

[4] Explaining the conceded error requires explication of the differing methodologies of the parties' experts. The Court bases its explanation of the methodologies, as best it can, on the expert's testimony at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

stub." *Id.* After excluding all of these non-matching records, Dr. Kennedy used the totals culled from the matching records to make a class-wide estimate. The bankruptcy court found that this method caused Dr. Kennedy to "eliminate from his study all timesheet/pay stub combinations where there was a cash payment, since payment of hours would not match the timesheets." E.R. 627. The bankruptcy court concluded that this elimination was "not random" and "implicates a built in bias" in the study. *Id.* The bankruptcy court further concluded that the study of the creditors' expert, Dr. Phillips, contained "no such bias and therefore carries greater weight." *Id.*

As the Sahagun Creditors concede,[5] the bankruptcy court committed clear error in finding that Dr. Kennedy excluded all records indicating a cash payment when selecting his sample. In fact, Dr. Kennedy had *initially* excluded *all* "non-matches"–records in which the hours worked (according to the timesheet) did not match the hours paid (according to the pay stub)–even where the time sheet indicated that a worker had been partially paid in cash. E.R. 1488. However, Dr. Kennedy subsequently revised his report to expand his sample to include those previously excluded "non-matches" that could be attributed to a cash payment. E.R. 1488-89. In other words, his revised estimate was based on a sample that included all matching records as well as those non-matching records where the discrepancy could be explained by a recorded cash payment. Thus, the Court concludes that the bankruptcy court's finding that Dr. Kennedy did not use payment records reflecting a cash payment in estimating damages was clearly erroneous.

Despite their concession, the Sahagun Creditors seek to minimize the bankruptcy court's error. As the creditors point out, Dr. Kennedy's revised sample only included those non-matches that could be explained by a cash payment. In other words, Dr. Kennedy's revised sample still excluded all the non-matching records that did not contain any indication of a cash payment. The gist of the creditors' argument on this point is

---

[5] *See* Ans. Br. at 26 ("Appellees are not able to provide an explanation of why the Memorandum of Decision suggests that the 7,200 excluded timesheets are those that indicate a cash payment was made to the worker.... Perhaps the Bankruptcy Court refers to the initial study of Dr. Kennedy and that [sic] fact that the time records indicating a cash payment had to be manually identified and included since they are still a non-matching record.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

that, despite the bankruptcy court's error with regard to the cash payments, Dr. Kennedy's estimate was still biased by the exclusion of the remaining non-matching records. Furthermore, the finding of bias in Dr. Kennedy's estimate was not the only reason that the bankruptcy court adopted the estimate of Dr. Phillips, the Sahagun Creditors' expert. For example, the bankruptcy court also based its ultimate decision on the fact that Dr. Phillips gave estimates under several different scenarios based on the different legal determinations on the coverage of the PWL. E.R. 628.

Moreover, the Court rejects Landmark's contention that Dr. Phillips's estimate was tainted by the same bias as Dr. Kennedy's. Landmark argues that both experts excluded non-matching records, and thus that it was erroneous for the bankruptcy court to find that this exclusion marred Dr. Kennedy's report but not Dr. Phillips's. The record does not support Landmark's contention. While Dr. Phillips testified that he discarded data when it was unusable–such as when a timesheet or payroll record was illegible or missing–he further testified that he included in his sample those workweeks in which the hours shown on the paysheet did not match the hours paid in the corresponding payroll record. E.R. 1260; 1263. In contrast, Dr. Kennedy excluded *all* non-matching data from his sample (other than when cash payment was indicated). E.R. 1488. In other words, Dr. Kennedy excluded records when it appeared that a worker had not been paid for the total hours indicated on his timesheet, but Dr. Phillips did not. *See* E.R. 1262 (Dr. Phillips expressing "surprise[]" that Dr. Kennedy would exclude this data "in a case focusing on unpaid wages"). In light of this fact, the Court holds that Landmark has not shown that it was clearly erroneous for the bankruptcy court to conclude that Dr. Kennedy's estimate reflected bias but that Dr. Phillips's study did not.

Thus, despite the bankruptcy court's erroneous factual finding regarding Dr. Kennedy's treatment of the cash payments, this Court concludes that reversal of the bankruptcy court's adoption of Dr. Phillips's estimate is unwarranted. Although the bankruptcy court failed to acknowledge that Dr. Kennedy had partially cured one of the perceived flaws in his study, it did not err in concluding that Dr. Phillips's study was less

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV12-01582 AHM<br>Bk. Case No. 6:09-BK-20206 MJ | Date | March 6, 2013 |
|---|---|---|---|
| Title | In re LANDMARK FENCE CO., INC. | | |

biased than that of Dr. Kennedy.[6] Accordingly, this Court concludes that Landmark has not demonstrated that the bankruptcy court's decision to adopt Dr. Phillips's estimate was clearly erroneous.

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS in part and REVERSES and REMANDS in part the bankruptcy court's decision allowing the Sahagun Creditors' claim. The Court affirms the bankruptcy court's holding that the Sahagun Creditors are entitled to payment at prevailing wages for time spent fabricating material off-site for later installation at a public works site. The Court reverses the bankruptcy court's holding that the Sahagun Creditors are entitled to prevailing wage payment for time spent traveling from Landmark's shop to public works sites and remands for further fact-finding on that issue. Finally, the Court affirms the bankruptcy court's adoption of the damages estimate of the creditors' expert.

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.


**JS-6**

cc: **Bankruptcy Court**

|   | : |   |
|---|---|---|
|   | Initials of Preparer | SMO |

---

[6] In one paragraph in its reply brief, Landmark argues that Dr. Phillips's sample was too small to be accurate. Reply Br. 13-14. The bankruptcy court acknowledged this issue, but Landmark contends that it failed to appreciate its "gravity." *Id.* at 14. Because Landmark did not present this argument in its opening brief, the Court will not consider it. *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003).